UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL A. COLLINS,<br><br>                              Plaintiff,<br><br>v.<br><br>CLINICIAN LOPEZ, SERGEANT WILSON, DEPUTY WARDEN MCKAY, WARDEN ROSS,<br><br>                              Defendants. | Case No. 1:24-cv-00454-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The prisoner civil rights complaint of Plaintiff Michael A. Collins (Plaintiff) was conditionally filed by the Clerk of Court upon receipt. The Complaint is subject to review by the Court to determine whether it should be dismissed under 28 U.S.C. §§ 1915. Having reviewed the record, the Court enters the following Order.

**REVIEW OF COMPLAINT**

## 1.    Background

Plaintiff is a prisoner at the Idaho State Correctional Center (ISCC). He suffers from mental health conditions, but has not been given access to the mental health program located in C-Tier Unit 1 or 2 at the Idaho Maximum Security Institution (IMSI). He alleges this is a violation of his rights under the Eighth Amendment's prohibition of cruel and unusual punishment. He alleges that Defendants Clinician Lopez, Sergeant Wilson, Deputy Warden McKay, and Warden Ross are inhibiting him from transferring facilities to receive proper care. He claims that his rights as a mental health patient are not being adequately

met. He currently is receiving only mental health medication, which he alleges is inadequate. Plaintiff has tried multiple times to be transferred to the mental health program, stating, "I have been given many conditions, which I have met and been sent everywhere, but the place, that would serve me best." Dkt. 3 at 4.

**2.      Standard of Law for Review of Complaint**

The Court is required to review prisoner complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915. The Court must dismiss a complaint or any portion thereof that states a claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

A complaint should also be dismissed under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the Complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

To bring a claim under § 1983, a plaintiff must allege a violation of rights protected

by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

To state a claim under the Eighth Amendment, a plaintiff must provide facts alleging that he is incarcerated "under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). A plaintiff must also state facts alleging that the defendants were deliberately indifferent to the plaintiff's needs. Deliberate indifference exists when an official knows of and disregards an unconstitutional condition; or when the official is aware of facts from which the inference could be drawn that a risk of harm or violation exists, and actually draws the inference. *Id.* at 837.

For claims of inadequate medical care, a plaintiff must allege facts showing that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Prisoners are "entitled to psychological or psychiatric care for serious mental or emotional illness." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir.

1979). There is "no underlying distinction between the right to medical care for physical ills and its psychological or psychiatric counterpart." *Id*. (internal quotation marks omitted).

But differences in judgment between inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989), *overruled in part on other grounds, Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014). Nor are differences among medical providers. *Snow v. McDaniel,* 681 F.3d 978 (9th Cir. 2012), 681 F.3d at 987), *overruled in part on other grounds*. "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoners health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted).

Moreover, mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980). A mere delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay causes serious harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). If the defendants can show that medical personnel have been "consistently responsive to [the inmate's] medical needs, and there has been no showing that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," a plaintiff's claims may be dismissed by summary judgment prior to trial. *Toguchi*, 391 F.3d at 1061.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to [him]"). A prison doctor's recommendation for a less costly treatment is not deliberate indifference unless the recommendation "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

But, other courts have noted that, when the level of a prison's mental health care "'fall[s] below the evolving standards of decency that mark the progress of a maturing society,'" the Eighth Amendment may be implicated. *See Disability Rts. Montana, Inc. v. Batista*, 930 F.3d 1090, 1097 (9th Cir. 2019) (quoting *Brown v Plata,* 563 U.S. 493, 505 n.3 (2011)).

Clearly, there is no constitutional right to be housed in a particular unit in prison or the facility of one's choice. *See Meachum v. Fano*, 427 U.S. 215, 255 (1976); *McCune v. Lile*, 536 U.S. 24, 38 (2002). Further, there is also no constitutional right to rehabilitation. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (no right to a particular security classification or to prison rehabilitative services); *Bauman v. Arizona Dep't of Corrections*, 754 F.2d 841, 844 (9th Cir. 1985) (no constitutional right to work furlough classification); *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (*overruled in part on other grounds by Sandrin v. Conner*, 515 U.S. 472 (1995)). Therefore, Plaintiff cannot

state a claim by showing merely that he is not housed in the prison's mental health unit. He must show that the mental health care he is receiving—regardless of where he is housed—is constitutionally deficient, and that prison officials cannot meet the constitutional standard of care unless they house him in the requested program.

**3.    Discussion**

Plaintiff alleges that all Defendants play a role determining his eligibility to transfer to the mental health unit at IDOC. The Complaint has no specific allegations showing deliberate indifference of any Defendant. Plaintiff's current allegations are too vague to permit him to proceed under the *Iqbal* standard.

For injunctive relief claims (an order to do or refrain from doing something), the proper state defendant is the one who "would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims." *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012).

For individual capacity claims for monetary damages against prison officials, Plaintiff must provide specific facts showing the "personal participation by the defendant" as to each alleged constitutional violation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

As to defendants who are sued for monetary damages because they are supervisors, the law is clear that there is no respondent superior liability under §1983. *Id*. This means that a plaintiff cannot sue a supervisor merely because of his or her supervisory position, if that supervisor knew nothing about, or had no participation in, the alleged constitutional violation. In selecting proper defendants, Plaintiff should be aware that "[l]iability under

section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (there is no respondeat superior liability under § 1983). "Personal participation" for a supervisor means there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Allegations sufficient to show a causal connection include: (1) "setting in motion a series of acts by others"; (2) "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failing to act or improperly acting in "the training, supervision, or control of his subordinates"; (4) "acquiesc[ing] in the constitutional deprivation"; or (5) engaging in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1207-08 (internal quotations and punctuation omitted).

In *Madrid v. Gomez*, a case with similar facts, the evidence showed treatment for seriously ill inmates was primarily limited to medication management through use of "antipsychotic or psychotropic drugs." 889 F. Supp. 1146, 1218 (N.D. Cal. 1995). The prison doctor testified that "staffing shortages … led inexorably to inadequate access to care, inappropriate and shoddy medication management and monitoring, and chaotic record-keeping." *Id*. Likewise, in this case, Plaintiff alleges that "all they [the medical staff] do is drug me up." Dkt. 3 at 5. The Court recognizes that Plaintiff does not have access to medical staffing information to research whether understaffing is or is not a potential cause for his non-placement in the mental health unit.

Another issue identified in *Madrid v. Gomez* was that "psychiatrists and

psychologists [were] not, as a practical matter, allowed input into cell housing decisions, even when the inmate [was] suffering acute symptoms and the mental health staff believe[d] that a change in housing conditions [could be] potentially necessary to the effective treatment of the inmate's disorder." *Id.* at 1221. Again, prisoners usually do not have access to this information to support his claims of insufficient mental health treatment.

The Court has considered whether requiring amendment of the pleadings or ordering a Martinez Report would be more beneficial in this case. In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the trial court ordered (before answer) that prison officials conduct an investigation of the incident to include an interrogation of those concerned, and file a report with the court, to enable the court to decide the jurisdictional issues and make a determination under section 1915(a). *Id*. at 319. The Ninth Circuit approved of the use of *Martinez* reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

Because most of the factual information needed is in the hands of prison officials and because Plaintiff alleges he suffers from a mental illness and, hence, may not have the ability to amend his pleadings to make them more helpful to the screening process, the Court will order a Martinez Report as the next step in screening.

## MARTINEZ REPORT

 Defendants will be required to provide a Martinez Report to address: (1) Plaintiff's current (and, if known, future) course medical health treatment; (2) qualifications for C-Tier's mental health program; (3) information about the decision-making process for qualifying for C-Tier's mental health program; (4) options for mental health treatment available for IDOC prisoners; (5) differences between the C-Tier mental health program

and the mental health treatment Plaintiff is receiving; and (6) whether staffing shortages or other problems have prevented Plaintiff's placement in the mental health program.

All relevant exhibits addressing these issues identified by Defendants or counsel, should be attached to the report (with or without redactions, sealed or in camera, if appropriate). The Martinez Report shall be filed within 60 days. Plaintiff may file a response to the Martinez Report within 30 days after receiving it. Thereafter, the Court will issue a successive review order determining whether Plaintiff has stated a claim under the Eighth Amendment upon which he may proceed.

### REQUEST FOR APPOINTMENT OF ATTORNEY

Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1330-31 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "extraordinary cases." *Id*. at 1330. To determine whether extraordinary circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1990). Neither factor is dispositive, and both must be evaluated together. *Id*.

At this point, the allegations are too vague for the Court to determine whether Plaintiff's claims have any merit. Generally, the Court does not appoint counsel simply to

help a plaintiff explore whether he has a claim. Where a plaintiff may have difficulty articulating a claim and most of the relevant information is held by prison officials, a Martinez Report is often the more efficient way to obtain and evaluate this information during the pleadings stage. After the Court reviews the Martinez Report and any response, it will re-evaluate the request for pro bono counsel.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Appointment of Counsel (Dkt. 4) is DENIED without prejudice.

2. Within **60 days** after entry of this Order, Defendants shall make a limited special appearance and provide the following to Plaintiff and the Court in the form of a Martinez Report following the information described above.

3. Within **30 days** after the filing of the Martinez report, Plaintiff may file a response to the Report.

4. The Clerk of Court shall provide an electronic copy of this Order to **Mary Karin Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706, or at her registered ECF address on behalf of Defendants.

DATED: February 6, 2025

David C. Nye
Chief U.S. District Court Judge